UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 11-80719-CIV-MARRA/HOPKINS

JUDITH HANNES and
STEVAN HANNES,

    Plaintiffs,

vs.

CONFERENCE ON JEWISH MATERIAL
CLAIMS AGAINST GERMANY, INC. a/k/a
JEWISH CLAIMS CONFERENCE,

    Defendant.
_____/

**OPINION AND ORDER**

This cause is before the Court upon Defendant Conference on Jewish Material Claims Against Germany, Inc.'s ("The Conference") Motion to Dismiss (DE 14). The matter has been fully briefed and is ripe for review, and the Court held a hearing on this matter on April 17, 2012.

**I. Background[1]**

This matter arises out of a dispute between The Conference and Plaintiffs Judith and Stevan Hannes ("Plaintiffs"), legal heirs and beneficiaries of Bertha Bach. Amended Complaint at ¶ 41. The crux of the Amended Complaint stems from assets received by The Conference on behalf of Bertha Bach pursuant to a claims process established by the German government.

*A. The VermG*

After the conclusion of World War II, five American-based Jewish groups formed a committee to represent Jewish interests in reparations negotiations with the German government.

---

[1] The facts are taken from Plaintiffs' Amended Complaint and are assumed true for the purposes of The Conference's Motion to Dismiss.

Amended Complaint at ¶ 7. In 1946, the American military authority designated the Jewish Restitution Successor Organization ("JRSO") as successor to heirless and unclaimed Jewish property. Amended Complaint at ¶ 9. In 1951, the Conference on Jewish Material Claims Against Germany, the Defendant in this case, supplanted the JRSO. In 1952, the Conference incorporated as a non-profit corporation in the State of New York. Amended Complaint at ¶ 11-12. Also in 1952, the West German federal government admitted responsibility for Nazi crimes against the Jews and agreed to pay reparations to the Jewish people. Amended Complaint at ¶ 14.

After the fall of the Berlin Wall, East Germany became part of a unified Germany and the new unified federal government passed The East German Property Restitution Law, known as "VermG."[2] The VermG allowed the rightful owners of property lost as a result of World War II to file claims with the German government. See Amended Complaint at ¶¶ 16-23. The VermG also authorized The Conference to file claims for unclaimed assets and to obtain the return of such property where the rightful claimants do not file a "timely" claim. Amended Complaint at ¶ 16. The VermG defined "timely" as a claim for intangible property filed by December 31, 1992, and a claim for tangible property filed by June 30, 1993. Amended Complaint at ¶ 23.

B. Bertha Bach's Estate

Bertha Bach owned a 771 square meter parcel of property in East Berlin. Amended Complaint at ¶¶ 44-45. In 1938, after being threatened by the German government, Bach sold the property to a German citizen. Amended Complaint at ¶ 46-47. On or about December 1992,

---

[2] "VermG" is short for Vermoegengestetz, the German name for the East German Property Restitution Law. Amended Complaint at ¶ 16.

The Conference filed a claim for the Bach property pursuant to its authority under the VermG. Amended Complaint at ¶ 48. The Conference was ultimately granted the proceeds of the sale of the Bach property and designated a "legally entitled entity" to file for unclaimed Jewish property. Amended Complaint at ¶ 50. The decision to grant The Conference the proceeds of the sale was appealed by private German sellers of the property, whose appeal was denied by an administrative court in Berlin on or about August 2004. Amended Complaint at ¶ 51. During or prior to the appeal, The Conference produced a birth certificate of Bertha Bach establishing that she was Jewish. Amended Complaint at ¶ 52.

C. *Procedural Posture*

Through their Amended Complaint, Plaintiffs allege that The Conference: (1) was unjustly enriched by receiving compensation from the German government for the Bach Property (Amended Complaint at ¶¶ 56-61); (2) breached a fiduciary duty owed to Plaintiffs "to protect their interest in the Bach Property and obtain any compensation on their behalf deriving from the Bach Property a result of the activities of the Nazi's" (Amended Complaint at ¶¶ 62-66); and (3) violated a constructive trust which arose in favor of Plaintiffs (Amended Complaint at ¶¶ 67-76[3]). The Conference now seeks to dismiss the Amended Complaint pursuant to Federal Rules of Civil Procedure 12(b)(1), 12(b)(3), and 12(b)(6).[4]

---

[3] The Amended Complaint contains a scrivener's error that mislabels paragraphs 75, 76, and 77 as paragraphs 71, 72, and 73 respectively.

[4] Although Defendant's motion seeks dismissal pursuant to only 12(b)(3) and 12(b)(6), Defendant seeks to dismiss the Amended Complaint due to lack of standing, and such an attack is brought pursuant to Rule 12(b)(1). See Region 8 Forest Service Timber Purchasers Council v. Alcock, 993 F.2d 800, 807 n. 8 (11th Cir. 1993) (internal citations omitted).

## II. Improper Venue

*A. Legal Standard*

"Rule 12(b)(3) is the proper avenue for a party's request for dismissal based on a forum-selection clause." Slater v. Energy Services Group Intern., Inc., 634 F.3d 1326, 1333 (11th Cir. 2011). "In considering a motion under Rule 12(b)(3), a court must accept the facts in a plaintiff's complaint as true." Walker v. Hallmark Bank & Trust, Ltd., 707 F.Supp. 2d 1322, 1325 (S.D. Fla. 2010) (citing Wai v. Rainbow Holdings, 315 F.Supp. 2d 1261, 1268 (S.D. Fla.2004). A court may also "consider matters outside the pleadings if presented in proper form by the parties." Id. (quoting MGC Commc'ns, Inc. v. BellSouth Telecomms., Inc., 146 F.Supp. 2d 1344, 1349 (S.D. Fla.2001). "Where conflicts exist between allegations in the complaint and evidence outside the pleadings, the court 'must draw all reasonable inferences and resolve all factual conflicts in favor of the plaintiff.'" Id. (quoting Wai, 315 F.Supp.2d at 1268.)

*B. Discussion*

In support of their Motion to Dismiss pursuant to Rule 12(b)(3), The Conference attached the Declaration of Karen Heilig, Assistant Executive Vice President and In House Legal Counsel for The Conference ("Declaration"). See DE 15-1. The Court has carefully reviewed the Declaration, the only affidavit submitted in support of The Conference's Motion to Dismiss, and finds that it is insufficient to support dismissal. The Declaration discusses "The Goodwill Fund Guidelines," which purportedly contains a forum selection provision that The Conference asserts is controlling here. DE 15-1 ¶¶ 15-21. However, the Declaration states that although Plaintiffs filed a claim pursuant to those guidelines, that claim was ultimately rejected. DE 15-1 ¶¶ 22-25. Moreover, Plaintiffs are not seeking relief pursuant to those guidelines here. Further, nothing in

the Declaration asserts that Plaintiffs agreed to be bound to the Goodwill Fund Guidelines or its forum-selection provision. Accordingly, dismissal based upon improper venue is not appropriate.

Even if the Court were to find that Plaintiffs agreed to be bound to the forum selection provision outlined in the Goodwill Fund Guidelines, dismissal on that basis would still not be appropriate. The specific portion of the Goodwill Fund Guidelines upon which The Conference relies states, "The venue for applications and payments is Frankfurt. German law governs any issues or disputes relating to the Goodwill fund." DE 15-1 at p. 29 (Exhibit "B" ¶ 17). This clause is inapplicable to the present case. The provision relates to venue for "applications and payments" from the Goodwill Fund. Plaintiffs are not applying for payments from the Goodwill Fund. Rather, they are suing a New York nonprofit corporation for damages stemming from actions that they claim give rise to common law causes of action. See Amended Complaint at ¶¶ 56-73. Accordingly, the clause relied on by The Conference is inapplicable.

For all the aforementioned reasons, The Conference's Motion to Dismiss pursuant to Rule 12(b)(3) is **DENIED**.

### IV. Standing

*A. Legal Standard*

"Because a motion to dismiss for lack of standing is one attacking the district court's subject matter jurisdiction, it is brought pursuant to Rule 12(b)(1)." Alcock, 993 F.2d at 807 n. 8. Where a motion to dismiss is made on the basis of lack of subject matter jurisdiction pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure, subject matter jurisdiction may be attacked either facially or factually. See McElmurray v. Consolidated Gov't of

Augusta—Richmond County, 501 F.3d 1244, 1251 (11th Cir.2007). As the Eleventh Circuit explained in Lawrence v. Dunbar, 919 F.2d 1525, 1528–29 (11th Cir.1990):

> "Facial attacks" on the complaint "require[ ] the court merely to look and see if [the] plaintiff has sufficiently alleged a basis of subject matter jurisdiction, and the allegations in his complaint are taken as true for the purposes of the motion." "Factual attacks," on the other hand, challenge "the existence of subject matter jurisdiction in fact, irrespective of the pleadings, and matters outside the pleadings, such as testimony and affidavits, are considered."
>
> These two forms of attack differ substantially. On a facial attack, a plaintiff is afforded safeguards similar to those provided in opposing a Rule 12(b)(6) motion—the court must consider the allegations of the complaint to be true. But when the attack is factual, the trial court may proceed as it never could under 12(b) (6) or Fed.R.Civ.P. 56. Because at issue in a factual 12(b)(1) motion is the trial court's jurisdiction—its very power to hear the case—there is substantial authority that the trial court is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case. In short, no presumptive truthfulness attaches to plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims.

Id. at 1528–29 (citations omitted).

B. Discussion

The party invoking federal jurisdiction bears the burden of proving standing. Bischoff v. Osceola County, Fla., 222 F.3d 874, 878 (11th Cir. 2000) (citing Lujan v. Defenders of Wildlife, 504 U.S. 555, 561 (1992)). "The Supreme Court has explained that the 'irreducible constitutional minimum' of standing under Article III consists of three elements: an actual or imminent injury, causation, and redressability." Hollywood Mobile Estates Ltd. v. Seminole Tribe of Fla., 641 F.3d 1259, 1265 (11th Cir. 2011) (citing Lujan, 504 U.S. at 560-61)). "The injury-in-fact element requires 'an invasion of a **legally protected** interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical.' " Id. (citing

Lujan, 504 U.S. at 560) (emphasis supplied).

Here, the Court concludes that Plaintiffs have failed to articulate a "legally protected interest" upon which Defendant has intruded.  After carefully reviewing the documents relied on in Plaintiffs' Amended Complaint, the Court agrees with the view of other federal courts that have held that third-party plaintiffs simply do not have any personal rights stemming from the agreements between Germany and The Conference.  See Sampson v. Fed. Republic of Germany, 975 F. Supp. 1108, 1121 (N.D. Ill. 1997) ("[Plaintiff] has not established that any personal rights exist in the agreements between Germany and the Claims Conference.  Therefore, Sampson does not have any claims to pursue."); Wolf v. Germany, 95 F.3d 536, 544 (7th Cir. 1996) ("The Protocols, which as we have already noted were concerned with various actions of the German government, do not expressly create any right to recover for particular individuals or classes of individuals.")  Because Plaintiffs do not have any rights arising from the agreement between Germany and the Claims Conference, Defendant owes no duty to Plaintiffs upon which the causes of action asserted in this case can be based.

The Court appreciates that Plaintiffs are not suing under the laws of Germany.  Rather, they assert their claim arises out of Defendant's Articles of Incorporation.  However, the sovereign nation of Germany established a system for Jewish people aggrieved by the actions of the Nazi regime to be compensated for their loss of property.  Defendant was granted rights under that system and successfully pursued the rights granted to it.  Those facts do not impose a corresponding duty on Defendant to act for the benefit of Plaintiffs.  Plaintiffs real complaint is with the system established by Germany, not with Defendant which merely acted in accordance with that system.  Plaintiffs cannot use Defendant as a scapegoat for their dissatisfaction with the

German compensation system.  Plaintiffs have failed to set forth any authority that supports the proposition that a non-profit corporation granted rights under a compensation system established by a sovereign nation owes a duty to other potential beneficiaries of that system who failed to pursue their rights in a timely manner.  The Court agrees with one New York state court that concluded that The Conference owes "no direct duty to any specific person which would provide standing to sue the organization." Rottenberg v. Conference on Jewish Material Claims Against Germany, Inc., Index No. 110615/04 (N.Y. Sup. Ct. Feb. 16, 2005)).

Ultimately, Plaintiffs have failed to identify any legally protected interest that can serve as a basis for its common law claims.  Since Plaintiff has no legally protected interest in the property at issue, Plaintiffs could not have suffered an "injury in fact" from Defendants conduct.  See Orient v. Linus Pauling Institute of Science and Medicine, 936 F. Supp. 704, 707 (D. Ariz. 1996).  "Having failed to establish an inquiry in fact, it logically follows that Plaintiff also cannot meet the remaining two elements of the constitutional inquiry, causation and redressability." Id.  Accordingly, Plaintiff's Motion to Dismiss for lack of standing is **GRANTED**.

### VI.  Conclusion

Accordingly, it is hereby **ORDERED AND ADJUDGED** that Defendant Conference on Jewish Material Claims Against Germany, Inc.'s ("The Conference") Motion to Dismiss (DE 14) is **GRANTED**.  This case is **DISMISSED WITH PREJUDICE**.  The Clerk of this Court is

ordered to **CLOSE** this case.  All pending motions are **DENIED AS MOOT**.

**DONE AND ORDERED** in Chambers at West Palm Beach, Palm Beach County, Florida, this 4th day of September, 2012.

_____
KENNETH A. MARRA
United States District Judge